AUSA:  Matthew Roth          Telephone:  (313) 226-9186

AO 106 (Rev. 04/10) Application for a Search Warrant          Special Agent:          Darryl Pugh          Telephone:  (313) 964-6696

SEALED MATTER

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Michigan

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
754 Orchard Lake Road
Pontiac, Michigan 48341

)
)
)
)
)
)

Case: 2:16-mc-50710-1
Judge: Borman, Paul D.
Filed: 05-16-2016
SEALED MATTER (LH)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the ___Eastern___ District of ___Michigan___, there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed.R.Crim.P.41(c) is *(check one or more)*:

- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

F I L E D
MAY 16 2016
CLERK'S OFFICE
DETROIT

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| Title 18 U.S.C. Section 1028 | Fraud with Identification Documents, Authentication Features, and Information |
| Title 18 U.S.C. Section 542 | Entry of Goods by Means of False Statements |

The application is based on these facts:
See attached AFFIDAVIT.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Darryl Pugh, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  May 16, 2016

_____
*Judge's signature*

City and state:  Detroit, michigan

Hon. Elizabeth A. Stafford, U. S. Magistrate Judge
*Printed name and title*

## <u>AFFIDAVIT IN SUPPORT OF A SEARCH AND SEIZURE WARRANT</u>

I, Darryl Pugh, being duly sworn, hereby depose and state as follows:

## I.  INTRODUCTION

1.     I am a Special Agent (SA) of the United States Department of

Homeland Security (DHS), Immigration and Customs Enforcement (ICE),

assigned to Homeland Security Investigations (HSI).  I have been so employed

since January 2008.  I have successfully completed the Criminal Investigator

Training Program and the Immigration and Customs Enforcement Special Agent

Training Program at the Federal Law Enforcement Training Center.  I have been a

federal agent since October 2002, and I have a combined total of approximately

eighteen (18) years of experience as a law enforcement officer.

2.     As part of my daily duties, I investigate criminal violations of federal

law involving fraud schemes, counterfeit/trademark infringing goods, counterfeit

marks, copyright infringement, and other violations of federal law.

3.     I have received training in investigating crimes involving commercial

fraud including Intellectual Property Rights violations.  I investigate people and/or

companies/businesses that are selling a variety of trademark goods bearing

counterfeit marks and/or pirated copyright products to the public via their web sites

on the Internet, their place of business, and/or where they conduct their business.

4.      This affidavit is, in part, based upon personal knowledge and/or information provided to me by other law enforcement officers, state and/or local officials, sources of information, and learned through reading reports and/or case file(s).  Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.  Where statements of others are related herein, they are related in substance and/or in part.  My knowledge of this investigation, my prior investigative experience, and the experience of other law enforcement agents and/or officials who are participating in this investigation, and who have participated in other similar investigations, serve as the basis for the statements, opinions and conclusions set forth herein.  The information set forth below is for the limited purpose of establishing probable cause to believe that evidence of violations of Title 18, United States Code, Sections 1028 (Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information) and 542 (Entry of Goods by Means of False Statements) exist.  This affidavit does not necessarily contain each and every fact known by the government concerning this investigation.  This affidavit is a summary of events.

## II.  BACKGROUND AND RELEVANT DEFINITIONS

A.    The importation of goods into the United States.

5.      In order to import goods into the United States, a business can use an "importer."  An importer will deal with the process of importing merchandise into the United States for the business.  The importer ensures that the importation of the business's goods meets regulatory requirements and all duties, taxes, and/or fees are paid to United States Customs and Border Protection (CBP).

6.      The importer also provides the commodity information to CBP and works with a customs broker.  A customs broker will electronically submit the commodity information to CBP.  In order to do so, the customs broker enters information about the commodity into a CBP database.  The broker's submission is assigned an entry number.  The entry number is a way for the customs broker and CBP to identify the individual submission.  The commodity information entered into the CBP database includes where the commodity entered the country (the Port of Entry) among other information.

7.      A customs broker "clears" goods through customs at a Port of Entry for an importer.  This involves the preparation of documents and/or electronic submissions, the calculation and payment of taxes, duties and fees, and facilitating communication between CBP and the importer.  The customs broker typically files

the import documents to CBP on behalf of an importer.  One of the documents includes CBP Form 7501.

8.      CBP Form 7501, also referred to as the "entry summary," is a form utilized by CBP to provide a summary of the imported goods entering into the United States.  Form 7501 provides CBP with the tariff classification of the goods, duties paid, the importer, the aforementioned entry number, the consignee information, and the Port of Entry.  The Port of Entry information on Form 7501 must match the Port of Entry information submitted into the CBP database by the customs broker.

9.      A consignee (or "ultimate consignee") is the individual or business, for CBP purposes, that receives the goods.  If the consignee is different than the importer of record, the consignee's name, address, and the state of destination is recorded on Form 7501.

10.      After a consignee uses an Importer (to take on the responsibility to import their merchandise/goods into the United States) and the importer contacts the customs broker (to file the necessary information and documentation with CBP) the goods are ready to arrive at a CBP Port of Entry.  At the Port of Entry, a CBP officer examines the manifest documents.  If everything meets regulations, the CBP officer will release the shipment with no further examination and the shipment is authorized for release.  The Form 7501 and appropriate payments

(duties, taxes, and fees) are submitted to CBP within ten days.  The imported goods have not legally entered the United States until after the shipment has arrived within the Port of Entry, delivery of the merchandise has been authorized by CBP, and estimated duties have been paid.

B.    The importation of vehicles into the United States.

11.    When motor vehicles are imported into the United States, the importer of record files entry documents for the vehicles with CBP at the designated Ports of Entry.

12.    Before an imported vehicle is sold to consumers in the United States, it must receive a title from a state.  In Michigan, the Michigan Department of State (MDOS) will only title vehicles that are (1) brought into Michigan through a Michigan Port of Entry or (2) destined for sale in Michigan.  Vehicles with no nexus to Michigan must be titled in the state where the vehicle is located. Michigan will only provide a title to a vehicle that has all the paperwork in order and there is no indication of fraud.

13.    To receive a Michigan title, the owner of the vehicle would need an MDOS Vehicle Number and Equipment Inspection (TR-54) form.  Only a Michigan certified law enforcement officer can complete a TR-54 form.  The law enforcement officer inspects the vehicle to ensure the vehicle is legally equipped for its purpose.  The law enforcement officer certifies that the vehicle is right and

proper (VIN numbers, safety features, untampered odometer, etc.).  MDOS uses the TR-54 form when determining if a vehicle has a Michigan nexus for titling purposes.

14.     Unlike many other states, Michigan can typically provide a title for a vehicle in seventy-two hours.  Utah, for example, can take approximately four to six weeks to title a vehicle.  The sooner a seller can obtain a clear title for a vehicle, the sooner they can sell it.  A seller can typically title and sell a vehicle more quickly in Michigan than in other states.

15.     MDOS will title a vehicle if the vehicle's Form 7501 established that it was imported through a Michigan Port of Entry.  MDOS has faced a growing problem of imported Canadian vehicles getting a Michigan title even though the vehicle never entered Michigan.  MDOS has been receiving counterfeit 7501 forms that indicated the vehicle was imported through a Michigan Port of Entry.  In response to this growing problem, MDOS requires "authenticated" 7501 forms. The "authenticated" forms have an official CBP stamp from a CBP Port of Entry. If the CBP Form 7501 indicated the vehicle was imported through a Port of Entry in another state, MDOS would not title the vehicle in Michigan unless evidence was provided that the vehicle was brought into Michigan.  That evidence consists of a signed TR-54 MDOS Vehicle Number and Equipment Inspection form.

### III. SUMMARY OF PROBABLE CAUSE

A.    <u>Fraudulent forms submitted to the Michigan Department of State</u>.

16.    On March 09, 2016, MDOS Regulation Manager (RM) Steve McConnell contacted HSI Detroit.  McConnell was in possession of several 7501 forms that appeared fraudulent.

17.    The suspected fraudulent 7501 forms pertained to vehicles imported from Canada.  The forms had been submitted to the State of Michigan in order to procure titles and registrations for the vehicles.  The forms indicated the vehicles were imported from Canada through the Port of Entry in Port Huron, Michigan. This information appeared fraudulent.  McConnell sent a representative sample of the fraudulent forms to Affiant.  The forms were reportedly prepared by David CHESLIN/ CHESLIN, INC.  CHESLIN is a licensed automobile dealer in the State of Michigan.

18.    Affiant is familiar with a CBP 7501 form.  Affiant examined the forms submitted by McConnell and determined they were fraudulent, in part, for the following reasons:

a.    The forms contained information in different fonts. The forms had different font types for different pieces of information.  Affiant is aware that the official form has the same font types throughout the document;

b.      The lettering of the agency names on at least one of the forms were bunched together.  With official forms, the lettering of the agency names are evenly spaced;

c.      One of the dates on the form was not aligned properly;

d.      The "authentication" or "True Certified Copy" stamps were improperly affixed to the document; and

e.      There were font differences with the Port of Entry Codes.

19.      Upon closer inspection, the fraudulent CBP "True Certified Copy" stamps, affixed to the 7501 forms, appeared to have pixelated lines.  Based on Affiant's training and experience, this can occur when a straight line is altered on a computer graphics editing type of program.

20.      Affiant contacted CBP.  CBP notified Affiant that the CBP stamps, affixed to the forms provided by McConnell, were not genuine stamps affixed by a CBP Port of Entry.

21.      Two of the CBP 7501 forms (entry numbers:  CIU-3031033-2 & CIU-6036713-7) were stamped with an entry date that occurred prior to when the summary date was filled out.  The summary date indicates when the "Entry Summary" information was filed with CBP.  These forms reflected that the goods entered the country before the paperwork was ever filled out.

22.     Additionally, one of the forms had a stamp affixed with a date that occurred prior to the actual date the commodity entered the country.  If CBP was requested to authenticate a Form 7501, CBP would stamp the Form 7501 upon or after entry of the commodity, never before the actual entry.  This was another indication that the forms and the authentication stamps were fraudulent.

23.     McConnell's fraudulent 7501 forms identified Port Huron, Michigan (CBP Port Code 3802) as the Port of Entry for the vehicles.  DHS/CBP system checks on the entry numbers listed on the 7501 forms revealed that the vehicles were imported through states in the western portion of the United States such as Sweet Grass, Montana and Eastport, Idaho.  The vehicles did not enter through Port Huron as reflected on the 7501 forms.

24.     Affiant requested CBPO Jeffrey Rupe and CBP Import Specialist (IS) Youssef Fawaz to verify the entry information in the 7501 forms.  Affiant also asked that IS Fawaz assist with the identification of the CBP Port Huron, Michigan and CBP Sweet Grass, Montana "True Certified Copy" stamps.

25.     On or about March 10 and 11, 2016, CBP Import Specialists and CBP Entry Supervisors confirmed that the forms contained altered and/or fraudulent information.  CBP confirmed that the forms also contained fraudulent CBP stamps. Affiant contacted and advised McConnell of the findings.

26.     Affiant is aware that CBP's standard procedure is to check the information on the 7501 form, in the DHS system, prior to affixing the CBP "True Certified Copy" stamp.  CBP would only affix the stamp if the information in the 7501 form was accurate.

B.     Inviso.

27.     McConnell received a call from an employee of Inviso.  Inviso is a company located in Grand Blanc, Michigan.  Inviso acts as a "middle man" between automobile dealers and the State of Michigan in the preparation of paperwork and titling of automobiles.  Specifically, Inviso specializes in dealing with licensed dealerships that deal in bulk volumes of automobiles.  Inviso facilitates the licensing of the automobiles with the State.  Inviso provided McConnell with the following information:

a.     CHESLIN provided the fraudulent documents (discussed in section A above) to "Inviso;"

b.     CHESLIN provided the fraudulent documentation (the CBP 7501 forms) so Inviso could submit them for Michigan vehicle titles; and

c.     CHESLIN was attempting to procure vehicle titles in Michigan for a dealership owner in Utah.

28.     Most of the fraudulent 7501 forms identified CHESLIN INC, 754 Orchard Lake Road, Pontiac, Michigan, 48341, as the "Ultimate Consignee" for

the vehicles.  DHS system checks revealed that the actual Consignee's of record

were (1) Brasher's Idaho Auto Action in Boise, Idaho; (2) Salt Lake Auto Auction

(aka:  Brashers Salt Lake Auto Auction/ Brasher Auto Auction) in Salt Lake City,

Utah; or (3) Manheim Detroit Carleton (aka: Manheim Detroit/ Manheim Detroit

Auto Auctions) in Carleton, Michigan.

29.    The consignee number listed on the forms resolved to Salt Lake Auto

Auction (DBA Brasher Auto Auction) in Salt Lake City, Utah.  The importer

number on the forms resolved to Auto Importers LLC in Farr West, Utah.  The

customs broker listed on the forms was Cole International USA Inc. in Sweet

Grass, Montana.  The DHS/CBP system checks revealed that David CHESLIN and

CHESLIN, INC. were not the actual consignee and/or ultimate consignee

associated with the entry numbers listed on the fraudulent CBP 7501 forms

provided by McConnell.  Also, the DHS/CBP system checks revealed that David

CHESLIN and CHESLIN, INC. were not listed as the importer of record as it

related to the entry numbers listed on the fraudulent CBP 7501 forms provided by

McConnell.

30.    The fraudulent documents related to vehicles being imported from

Canada, and they were provided by CHESLIN.  Each set of documents contained

the following:  Application for Michigan Title & Registration Statement of Vehicle

Sale (RD-108 forms), CBP Form 7501s, Canadian registration documents, odometer statements, power of attorney, and VIN inspection form (TR-54).

31.    The TR-54 forms allegedly contained the signature of a sworn law enforcement officer as required by law; in this case, an Oakland County Sheriff Deputy.  It was determined, however, that the law enforcement officer's name that appeared on the forms was not, in fact, an Oakland County Sheriff Deputy on the dates the TR-54 forms were signed.  Based on information provided to Affiant, the law enforcement officer's signature, which is required on the TR-54 forms, appeared to have been forged.

C.    Relevant locations for CHELSIN and CHESLIN, INC.

32.    A publicly available public database revealed two addresses associated with CHESLIN, INC:  (1) 3080 Orchard Lake Road, Keego Harbor, Michigan and (2) the aforementioned 754 Orchard Lake Road, Pontiac, Michigan, 48341.

33.    On or about June 12, 2014, MDOS conducted a regulatory check of CHESLIN INC, at 754 Orchard Lake Road.  The purpose of the regulatory check was to examine CHESLIN's files/documents and make sure they were in proper order.  During the check, CHESLIN took files and locked them in the trunk of his vehicle. CHESLIN refused to show MDOS the files.  As a result, MDOS was unable to complete the inspection that day.

34.    The 754 Orchard Lake Road Address was also the business address listed in the fraudulent 7501 forms provided to Affiant from McConnell.

35.    CHESLIN, INC. recently registered a new business location, with MDOS, at 3080 Orchard Lake Road.  On or about March 2, 2016, MDOS went to the business to approve the location.  On March 4, 2016, CHESLIN was approved to register CHESLIN, INC. to this address.  The 3080 Orchard Lake Road location also contained business files.  The MDOS concluded that CHESLIN sought approval for the location based on his representations that this is where he is conducting business.

36.    David S. CHESLIN had associated addresses at 2076 Garland Street, Sylvan Lake, Michigan, 48320.

D.    Five sets of fraudulent vehicle title transaction documents from CHESLIN.

37.    On March 7, 2016, McConnell received five sets of vehicle title transaction documents submitted to the Michigan Department of State (MDOS) by CHESLIN, INC.  McConnell was asked to review the documents for errors, and missing or false information.

38.    The title application documents were delivered to Inviso by David CHESLIN personally.

39.    McConnell made telephone contact on March 8, 2016, with Inviso. McConnell asked Inviso where the TR-54 forms were obtained.  Inviso indicated

David CHESLIN had previously dropped off the title application documents for

the five vehicles in question, and Inviso noticed the vehicles were imported

through port code # 3302, which is Eastport, Idaho.

40.    Inviso indicated CHESLIN was contacted and was informed that

CHESLIN, INC. was required to submit completed TR-54 forms, to confirm the

vehicles were physically in Michigan.  On February 3, 2016, CHESLIN personally

delivered the completed forms.  Inviso indicated the forms were then mailed out.

41.    Inviso has had additional transactions, possibly several hundred,

which had to be returned to CHESLIN for various issues.  On or about February 15

through 19, 2016, the forms were brought back to Inviso by CHESLIN.

42.    Inviso was not comfortable submitting the title applications on these

particular vehicles because the CBP 7501 forms did not look correct.  Inviso was

confident that some of the forms indicated that the vehicles were imported through

non-Michigan Ports of Entry.  The forms that CHESLIN brought back were

changed; they indicated the vehicles were imported through Port Huron.

43.    Inviso noted that it was odd when CHESLIN was at Inviso in

February.  CHESLIN asked if he could fly a Michigan police officer out of state to

inspect the vehicles in order to complete the TR-54 forms as CHESLIN "…had a

police officer on payroll . . . ."  Inviso also indicated they received a telephone call

from a dealership owner in Utah.  The call seemed odd because the person was

asking for information from Inviso regarding the Michigan title process. The caller

also wanted to know the charges for services provided by Inviso. McConnell

informed Inviso that the documents would be reviewed and McConnell would call

back with any questions.

44.     On or about April 6, 2016, McConnell provided additional

information and a report to Affiant. McConnell reported that CHESLIN, INC.

submitted five title applications to the Michigan Department of State on or about

February 26, 2016. CHELSIN, INC. also submitted the requisite TR-54 forms

("Vehicle Number and On-Road Equipment Inspection Form"). The TR-54 forms

were signed and dated by an Oakland County Sheriff's Deputy specifically named

in the document. McConnell determined that the listed deputy was not a member

of the Oakland County Sheriff's Office when the TR-54 forms were signed and

dated.

45.     CHESLIN, INC. submitted multiple additional title applications that

contained fabricated 7501 forms. McConnell's report indicated that CHESLIN,

INC. had a business address of 3080 Orchard Lake Road Suite M, Keego Harbor,

Michigan, 48320, and PO Box 628, Keego Harbor, Michigan, 48320.

46.     Affiant knows that if MDOS had not detected the fraudulent 7501

forms, the State of Michigan would have issued resale titles to CHESLIN, INC.

Further, CHESLIN, INC would have avoided the requirement of having a law enforcement officer complete a TR-54 VIN inspection on each vehicle.

E.      The e-mail between an Inviso employee and CHESLIN at "chez24@comcast.net".

47.     On or about March 9, 2016, MDOS Regulation Agent Mike Fowler collected one box of transaction documents from Inviso.  The box contains a total of 65 CBP 7501 forms with supporting documentation pertaining to the importation of 287 vehicles.  McConnell obtained the box of transaction documents from MDOS.  The box contained 233 individual title applications with supporting documentation.  Each vehicle transaction contained an allegedly fraudulent and/or fabricated CBP Form 7501.

48.     One of the 7501 forms had Port Code 3310 (Port of Sweet Grass, Montana).  The vehicle was actually imported through CBP Port of Entry in Sweet Grass, Montana.  Furthermore, the stamp on the 7501 form appeared fabricated. The stamp indicated that the vehicle entered through Port Huron, Michigan.  A copy was scanned and emailed to Affiant on March 9, 2016.  Subsequently, Affiant confirmed the stamp affixed to the CBP Form 7501 was fraudulent and/or fabricated.  McConnell indicated that MDOS had approximately two hundred and ninety-eight fraudulent/fabricated CBP 7501 forms.  Each of the two hundred and ninety-eight forms were submitted by CHESLIN.

49.     On or about March 31, 2016, Affiant received additional information

from McConnell regarding an email between an Inviso employee and David

CHESLIN at chez24@comcast.net:

> February 16, 2016, 2:33 PM (from Inviso to CHESLIN)
> Subject: Re: your business address
>
>> Dave,
>>
>> Can I have the address where Mark is dropping off the titles tomorrow
>> so I can get it all mapped out for him?
>
> February 16, 2016, 3:15 PM (from CHESLIN to Inviso)
> Subject: Re: your business address
>
>> I work out of my house:
>> 2076 Garland St., Sylvan Lake mi. 48320
>>
>> Any idea when I might see more titles?

50.     On April 18, 2016, Affiant conducted surveillance at 2076 Garland

Street, Sylvan Lake, Michigan and observed two vehicles parked inside the garage

with Michigan license plate number xxx580.  The license plate was registered to

CHESLIN INC, 3080 Orchard Lake Road, Suite M and Garage, Keego Harbor,

Michigan 48320.  The second vehicle had license plate number xxxx510.  This

vehicle was registered to CHESLIN CHEVROLET LEASING LLC, P.O. Box

628, Keego Harbor, Michigan 48320.

## IV.  CONCLUSION AND SUMMARY

51.    There is probable cause to believe that David CHESLIN and

CHESLIN, INC knowingly and willfully used fraudulent and/or fabricated

multiple CBP 7501 forms in an attempt to receive State of Michigan titles for

vehicles imported into the United States from Canada.

52.    The fraudulent CBP 7501 forms had a fraudulent CBP stamp affixed

in order to suggest their authenticity.  Probable cause exists that CHESLIN

submitted approximately two hundred and ninety-eight fraudulent/altered

DHS/CBP 7501 forms with a fraudulent/altered CBP "True Certified Copy" stamp

affixed on the forms.

53.    In addition, there is probable cause to believe:

a.    CHESLIN is in possession of computer(s)/ computer device(s)

and/or other device(s) that is used to create the fraudulent CBP "True Certified

Copy" stamp; and

b.    CHESLIN is in possession of computer(s)/ computer device(s)/

and/or other device(s) used to manipulate or create fraudulent CBP 7501 forms.

54.    These devices and other evidence related to the various violations of

federal law will most likely be found at the business addresses and/or reported

residence of David S. CHESLIN and CHESLIN, INC.  The locations are identified

as follows:

a.     <u>754 Orchard Lake Road, Pontiac, Michigan, 48341</u>.  This business address was used in the fraudulent CBP 7501 forms.  This location is also known as a business address for CHESLIN, INC.  Probable cause exists that records related to CHESLIN, INC. are stored at this location;

b.     <u>3080 Orchard Lake Road Suite M, Keego Harbor, Michigan, 48320</u>.  This location is known as a business address for CHESLIN, INC, as of March of 2016.  As of March of 2016, business records for CHESLIN, INC, were stored at this location;

c.     <u>2076 Garland Street, Sylvan Lake, Michigan, 48320</u>.  This location is known as the residence for CHESLIN.  In February of 2016, CHESLIN indicated that he worked out of this residence.  Additionally, Inviso was asked to drop vehicle titles off at this particular location.  Many of these titles were associated with the fraudulent documents submitted to MDOS; and

d.     Based on Affiant's training and experience, a business with multiple locations typically store business records at each location.

55.    Based on the investigation outlined above, Affiant respectfully requests that a search warrant be issued allowing Special Agents of HSI with appropriate assistance from other federal, state, and/or local law enforcement agencies, to enter the above locations, specifically identified and described in Attachment "A," to search for and seize items described in Attachment "B,"

believed to be evidence of violations of Title 18, United States Code, Sections

1028 (Fraud and Related Activity in Connection with Identification Documents,

Authentication Features, and Information) and 542 (Entry of Goods by Means of

False Statements).

_____

Darryl Pugh, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
this 16th day of May 2016.

_____

HON. ELIZABETH A. STAFFORD
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

1.  The property to be searched is located at 754 Orchard Lake Road, Pontiac, Michigan 48341.  The business is located near the intersection of Orchard Lake Road and Sylvan Court in Pontiac, Michigan.  The business appears to be a brick building/garage that is off-white in color with a front lot area and a tannish in color separate type of brick building/garage on the premises. The address number "754" appeared to be on the front entrance door of the main building.

2. The property to be searched also includes any affiliated business, safes, safety deposit box, containers, storage sheds and outbuildings located on the property to be searched.

3. The property to be searched also includes any affiliated vehicles located on the premises and/or belonging to or within the control and/or possession of CHESLIN parked on or adjacent to the property to be searched as well as any garages or carports located on the property used to store said vehicles.





# ATTACHMENT B

## DESCRIPTION OF PROPERTY TO BE SEIZED:

1.      Implements such as computers, computer storage devices, media, and any devices relating to scanned images of fraudulent documents and/or legitimate identity documents or that have the capability to store, capture or create such documents, importation, trademark infringement, and/or distribution of imported goods, fraudulent documents, fraudulent stamps/seals and/or counterfeit/ trademark infringing goods.

2.      Books, financial records, receipts, notes, bank statements and records, money drafts, monetary instruments, letters of credit, money orders, cashier's checks and/or items evidencing the obtaining, secreting, transferring, concealment and/or expenditure of money made from dealing in importation of goods, counterfeit/trademark infringement goods, importation of vehicles, fraudulent documents, authentication features, information and/or fraudulent stamps/seals.

 4.      Ledgers and other papers relating to the transportation, ordering, purchasing, and distribution of vehicles, importation of goods and/or vehicles including, but not limited to, W-2 forms, operator's permits, personal identification cards, credit card applications, driver's licenses, fraudulent documents, fraudulent stamps/seals, or official government stamps that may be in defendant's possession.

5.      Any correspondence and emails which relate to the importation, trafficking, smuggling, distribution and/or shipment of imported vehicles, fraudulent documents, fraudulent stamps/seals and/or counterfeit/ trademark infringement goods.  Any email correspondence between Inviso (aka:  Inviso Auto) and David CHESLIN and/or CHESLIN, INC.

6.      Records reflecting the ownership of assets obtained from importation of vehicles, Title Applications and Registrations for Michigan and/or any other State or Country.  In addition, any records reflecting ownership of assets obtained from smuggling, fraudulent documents, fraudulent stamps/seals, any fraudulent means/schemes and/or trafficking in counterfeit/trademark infringement goods.

7.      Records pertaining to accounts held with companies providing Internet access or remote storage of either data or storage media.

8.      Cellular telephones, mobile devices, SIM cards and other media, MicroSD

and memory cards, chargers, and data cords, or other communication devices used for the transportation, ordering, purchase, distribution, possession, and use of fraudulent stamps/seals, fraudulent documents and/or identification, and personal information and/or pictures showing possession, use and/or ownership of counterfeit goods, and/or telephone numbers of associates and co-conspirators involved directly and indirectly in the importation and/or trafficking of counterfeit goods and/or associates who have a monetary consideration and/or interest in the illegal importation of and trafficking in counterfeit goods, and/or trademark infringement goods.

9.      Photographs, negatives, video tapes, undeveloped film, and the contents therein, in particular pertaining to or of co-conspirators known and unknown, assets and/or fraudulent documents and/or identification which could be utilized to facilitate fraudulent means/schemes, fraudulent documents, fraudulent stamps/seals, counterfeiting, trademark infringement, and/or smuggling/ trafficking in goods/ vehicles.

10.     Records indicating occupancy, residency, and/or ownership of the premises described herein including, but not limited to utility and telephone bills, cancelled envelopes, mail addressed to persons at or outside the premises, keys, purchase, or lease agreements.

11.     Address and/or telephone indices or books reflecting names, addresses, telephone numbers, pager numbers, and fax numbers of co-conspirators known and unknown.

12.     Any documents bearing the U.S. Department of Homeland Security stamp/seal or bearing the words "Department of Homeland Security."

12.     Any documents bearing the Customs and Border Protection stamp/seal or bearing the words "Customs and Border Protection."  Any documents bearing "True Certified Copy", and/or indicating to be CBP Form 7501.

13.     Any documentation related to vehicle title applications, registrations, and/or inspections with the State of Michigan or any other State within the United States and/or any other country.

13.     Physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to any computer equipment, storage devices or data; and

14.     Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

AUSA:   Mattthew Roth, (313) 226-9186
Special Agent: Darryl Pugh, (313) 226-0518

AO 93 (Rev. 11/13) Search and Seizure Warrant

SEALED MATTER

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
754 Orchard Lake Road
Pontiac, Michigan 48341

Case: 2:16-mc-50710-1
Judge: Borman, Paul D.
Filed: 05-16-2016
SEALED MATTER (LH)

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____
*(identify the person or describe the property to be searched and give its location)* :
   See Attachment A.

FILED
MAY 16 2016
CLERK'S OFFICE
DETROIT

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal   *(identify the person or describe the property to be seized)*
   See Attachment B.

**YOU ARE COMMANDED**      to execute this warrant on or before _____ May 30, 2016 _____ *(not to exceed 14 days)*
✓ in the daytime 6:00 a.m. to 10:00 p.m.      at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ the presiding United States Magistrate Judge on duty _____ .
                                                                *(United States Magistrate Judge)*

Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
      for _____ days *(not to exceed 30)*      until, the facts justifying, the later specific date of _____ .

Date and time issued:   May 16, 2016      12:10 pm

Judge's signature

City and state:   Detroit, Michigan

Hon. Elizabeth A. Stafford, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF PROPERTY TO BE SEARCHED**

1.   The property to be searched is located at 754 Orchard Lake Road, Pontiac, Michigan 48341.  The business is located near the intersection of Orchard Lake Road and Sylvan Court in Pontiac, Michigan.  The business appears to be a brick building/garage that is off-white in color with a front lot area and a tannish in color separate type of brick building/garage on the premises. The address number "754" appeared to be on the front entrance door of the main building.

2.  The property to be searched also includes any affiliated business, safes, safety deposit box, containers, storage sheds and outbuildings located on the property to be searched.

3.  The property to be searched also includes any affiliated vehicles located on the premises and/or belonging to or within the control and/or possession of CHESLIN parked on or adjacent to the property to be searched as well as any garages or carports located on the property used to store said vehicles.





## ATTACHMENT B

## DESCRIPTION OF PROPERTY TO BE SEIZED:

1.     Implements such as computers, computer storage devices, media, and any devices relating to scanned images of fraudulent documents and/or legitimate identity documents or that have the capability to store, capture or create such documents, importation, trademark infringement, and/or distribution of imported goods, fraudulent documents, fraudulent stamps/seals and/or counterfeit/ trademark infringing goods.

2.     Books, financial records, receipts, notes, bank statements and records, money drafts, monetary instruments, letters of credit, money orders, cashier's checks and/or items evidencing the obtaining, secreting, transferring, concealment and/or expenditure of money made from dealing in importation of goods, counterfeit/trademark infringement goods, importation of vehicles, fraudulent documents, authentication features, information and/or fraudulent stamps/seals.

4.     Ledgers and other papers relating to the transportation, ordering, purchasing, and distribution of vehicles, importation of goods and/or vehicles including, but not limited to, W-2 forms, operator's permits, personal identification cards, credit card applications, driver's licenses, fraudulent documents, fraudulent stamps/seals, or official government stamps that may be in defendant's possession.

5.     Any correspondence and emails which relate to the importation, trafficking, smuggling, distribution and/or shipment of imported vehicles, fraudulent documents, fraudulent stamps/seals and/or counterfeit/ trademark infringement goods.  Any email correspondence between Inviso (aka:  Inviso Auto) and David CHESLIN and/or CHESLIN, INC.

6.     Records reflecting the ownership of assets obtained from importation of vehicles, Title Applications and Registrations for Michigan and/or any other State or Country.  In addition, any records reflecting ownership of assets obtained from smuggling, fraudulent documents, fraudulent stamps/seals, any fraudulent means/schemes and/or trafficking in counterfeit/trademark infringement goods.

7.     Records pertaining to accounts held with companies providing Internet access or remote storage of either data or storage media.

8.     Cellular telephones, mobile devices, SIM cards and other media, MicroSD

and memory cards, chargers, and data cords, or other communication devices used for the transportation, ordering, purchase, distribution, possession, and use of fraudulent stamps/seals, fraudulent documents and/or identification, and personal information and/or pictures showing possession, use and/or ownership of counterfeit goods, and/or telephone numbers of associates and co-conspirators involved directly and indirectly in the importation and/or trafficking of counterfeit goods and/or associates who have a monetary consideration and/or interest in the illegal importation of and trafficking in counterfeit goods, and/or trademark infringement goods.

9.    Photographs, negatives, video tapes, undeveloped film, and the contents therein, in particular pertaining to or of co-conspirators known and unknown, assets and/or fraudulent documents and/or identification which could be utilized to facilitate fraudulent means/schemes, fraudulent documents, fraudulent stamps/seals, counterfeiting, trademark infringement, and/or smuggling/ trafficking in goods/ vehicles.

10.    Records indicating occupancy, residency, and/or ownership of the premises described herein including, but not limited to utility and telephone bills, cancelled envelopes, mail addressed to persons at or outside the premises, keys, purchase, or lease agreements.

11.    Address and/or telephone indices or books reflecting names, addresses, telephone numbers, pager numbers, and fax numbers of co-conspirators known and unknown.

12.    Any documents bearing the U.S. Department of Homeland Security stamp/seal or bearing the words "Department of Homeland Security."

12.    Any documents bearing the Customs and Border Protection stamp/seal or bearing the words "Customs and Border Protection."  Any documents bearing "True Certified Copy", and/or indicating to be CBP Form 7501.

13.    Any documentation related to vehicle title applications, registrations, and/or inspections with the State of Michigan or any other State within the United States and/or any other country.

13.    Physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to any computer equipment, storage devices or data; and

14.    Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.